776 So.2d 1212 (2000)
STATE of Louisiana
v.
James BAKER.
No. 00-KA-1050.
Court of Appeal of Louisiana, Fifth Circuit.
November 15, 2000.
*1213 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Defendant/Appellant, James Baker.
James Baker, I.P.P.
Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Assistant District Attorney, Gretna, Louisiana, Attorneys for Plaintiff/Appellee, The State of Louisiana.
Panel composed of EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.

STATEMENT OF THE CASE
On July 15, 1999, defendant, James Baker, was charged by bill of indictment with possession with intent to distribute a controlled dangerous substance, to wit: heroin, in violation of La. R.S. 40:966 A. Defendant was arraigned on July 20, 1999, at which time he plead not guilty. On August 27, 1999, defendant filed a motion to suppress evidence, confession and identification, which was denied after a hearing that day. On September 20, 1999, defendant waived his right to a jury trial, and the case was tried by the judge. At the *1214 conclusion of trial, the judge found defendant guilty of the lesser charge of possession of heroin, La. R.S. 40:966 C. On October 5, 1999, defendant was sentenced to imprisonment at hard labor for a term of nine years. After sentencing, the state filed a multiple offender bill of information. Defendant denied the allegations of the multiple bill. On December 10, 1999, a multiple offender hearing was held, at which time the trial court found defendant to be a fourth felony offender. On January 12, 2000, the trial court vacated the original sentence and sentenced defendant as a fourth felony offender under La. R.S. 15:529.1 to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal ensued.

FACTS
Deputy Linden Schmitt, who is employed by the Jefferson Parish Sheriff's Office Street Crimes Unit, testified that on June 17, 1999, at approximately 10:07 p.m., he was patrolling the Madison Square area off of Manhattan Boulevard in Jefferson Parish. As he was driving down Manhattan Boulevard, he turned into a driveway that runs between Tensus and Inca Streets, an area known for high crime and narcotics activity. Deputy Schmitt saw two black males sitting on a white car which was parked parallel to the street. Their backs were turned toward Deputy Schmitt. Deputy Schmitt continued driving. The two men turned around, looked at the deputy, and appeared to become nervous. One of the men, who Deputy Schmitt identified as defendant, then turned away, looked back at Deputy Schmitt and tossed an object into the grass as he was sliding off of the car.
Deputy Schmitt stopped and approached the two men. He looked through the grassy area where the object was thrown, and found a small plastic bag which appeared to be packaged narcotics, containing numerous foil squares. There was nothing else in the area where defendant had discarded the object. At that point, defendant became apprehensive and very nervous. Deputy Schmitt attempted to place defendant under arrest and a struggle ensued. Defendant struck Deputy Schmitt in the chest and ran. Deputy Schmitt called for backup and defendant was apprehended by assisting deputies shortly thereafter.
Deputy Kevin Decker, who also works for the Jefferson Parish Sheriff's Office Street Crimes Division, testified that on June 17, 1999, at approximately 10:00 p.m., he and his partner, Deputy Heck, responded to an emergency call from Deputy Schmitt. When Deputy Decker first saw defendant, he was on the ground wrestling with Deputy Heck. Eventually defendant was taken into custody. Deputy Decker advised defendant of his constitutional rights before he was placed in Deputy Heck's patrol car. While defendant was in the back of the patrol car, he stated that he had bought the heroin in the Fisher Housing Project, and admitted that he was a heroin user. The officers then took defendant to the Jefferson Parish Correctional Center.
Edgar Dunn, who was qualified at trial as an expert in the field of isolation and identification of controlled substances, testified that he performed tests on the plastic bag containing twenty pieces of foil, each containing a white powder with a gross weight of 3.03 grams. He randomly selected four pieces of foil to test. His tests confirmed that each of the four pieces of foil contained heroin.

DISCUSSION
Defense counsel's sole assignment of error on appeal, and defendant's second assignment of error in his pro se brief, assert that the arresting officer did not have probable cause or reasonable suspicion to stop and seize defendant, and that therefore, all evidence, including incriminating statements defendant made to Deputies Heck and Decker, should have been suppressed by the trial court.
*1215 With regards to this issue, in State v. Gresham, 97-1158 (La.App. 5 Cir.4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200, we held:
The Fourth Amendment to the United States Constitution and La. Const. Art. 1, § 5 protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed or is about to commit a crime was established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also: State v. Keller, 403 So.2d 693, 696 (La.1981); State v. Duran, 96-602 (La. App. 5 Cir.3/25/97), 693 So.2d 2, 3, application dismissed, 97-1485 (La.1/9/98), 705 So.2d 1087. The requirements for a valid Terry stop and for any search incident to the stop was codified in La. C.Cr.P. art. 215.1, which provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
In State v. Sanders, 97-892 (La. App. 5 Cir.3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774, we further held:
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.
A law enforcement officer must be able to point to specific and articulable facts to justify an investigatory stop and these facts should be evaluated in light of the circumstances surrounding the incident. The reputation of an area is an articulable fact upon which a police officer may legitimately rely and which is relevant in a determination of whether there is reasonable suspicion to conduct an investigatory stop. This is because high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicions of an officer.
* * *
In order to determine whether reasonable suspicion exists, the totality of the circumstances, "the whole picture," must be considered.
(citations omitted).
The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La. App. 5 Cir.3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion, but may also consider pertinent evidence given at the trial. State v. Bell, 97-1134 (La.App. 5 Cir.2/25/98), 709 So.2d 921, 923, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477; State v. Byes, 94-611 (La. App. 5 Cir.12/28/94), 648 So.2d 1073, 1074 (and the cases cited therein).
In the instant case, Deputy Schmitt testified that he was patrolling a high crime area late at night when he noticed defendant and another man become nervous as *1216 he approached. Deputy Schmitt then witnessed defendant discard something onto the grass. We find, as the trial court did, that these facts gave Deputy Schmitt reasonable suspicion to stop and investigate further, and upon doing so, led Deputy Schmitt to discover the packaged heroin lying on the grass. Therefore, we find that defendant's motion to suppress was properly denied by the trial court.
In defendant's first assignment of error in his pro se brief, he argues that there was insufficient evidence to convict him of possession of heroin. While defendant does not dispute that the evidence found was heroin, he contends that the heroin could have belonged to someone else, since the area is known for crime and drug dealing. Defendant further contends that it was too dark for Deputy Schmitt to see the object which was allegedly tossed.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In the instant case, defendant was convicted of possession of heroin, a violation of La. R.S. 40:966(C) which provides in pertinent part: "It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I ..."
Therefore, the crime of possession of heroin requires proof that defendant knowingly or intentionally possessed the drug. At trial, the state presented the testimony of Deputy Schmitt, who testified that he saw defendant toss an object. When the deputy went to retrieve the object, there was nothing else on the ground in that area but the object, which appeared to be packaged narcotics, and which was later confirmed to be heroin. Deputy Schmitt testified that he was able to see the object because the area was sufficiently lit from the street lights and from the apartment complex lights nearby.
After hearing the testimony and evaluating the credibility of the witnesses, the trial court found defendant guilty of possession of heroin. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir.4/29/97), 694 So.2d 1052, 1056 (citation omitted).
Upon review, we find it well within the trial court's discretion to conclude that defendant possessed the heroin and then discarded it, as testified by Deputy Schmitt. Clearly, the evidence presented by the state at trial was sufficient under the Jackson standard to support defendant's conviction for possession of heroin.
In defendant's third assignment of error in his pro se brief, he argues that the state failed to prove that he was the same person who was convicted of the predicate offenses in the multiple offender proceeding. Defendant argues that the state failed to meet its burden of proving his identity as a fourth felony offender because his fingerprints were found on the arrest registers rather than on the bills of information.
In State v. Smith, 99-1395 (La. App. 5 Cir.4/25/00), 760 So.2d 506, 509, we set forth the following law regarding multiple offender adjudications:
To prove that a defendant is a habitual offender, the state must establish by competent evidence the prior felony convictions and that defendant is the same person who was convicted of the prior felonies. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Bailey, 97-302 *1217 (La.App. 5 Cir.4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971. The state may establish this by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings or photographs contained in a duly authenticated record. State v. Bailey, supra; State v. Brown, 514 So.2d 99 (La.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). Additionally, this court has held that testimony comparing a defendant's current fingerprints with those found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Hollins, 99-278 (La.App. 5 Cir.8/31/99), 742 So.2d 671; State v. Bell, 97-1134 (La. App. 5 Cir.2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
In the present case, at the multiple offender hearing, the state introduced certified copies of the record in Orleans Parish Criminal District Court case number 385-959, which included the multiple bill of information, the bill of information, the Boykin form on the underlying charge, the Boykin form on the multiple bill, the Orleans Parish docket master, motions, the screening action form, and the arrest register, which show that James Baker was convicted of possession of cocaine in that case.
The state also introduced certified copies of the record in Orleans Parish Criminal District Court case number 336-938, which included the multiple bill of information, the bill of information, a waiver of constitutional rights/plea of guilty form, the Orleans Parish docket master, the clerk notation sheet, a minute entry, a second minute entry, a screening action form, the arrest register, and the arrest register fingerprint card, which show that James Baker plead guilty to possession of cocaine in that case.
The state further introduced certified copies of the record in Orleans Parish Criminal District Court case number 292-930, which included the bill of information, the Orleans Parish docket master, a minute entry, a second minute entry, the arrest register, and the arrest register fingerprint card, which show that James Baker was convicted of being a convicted felon in possession of a firearm.
At the multiple offender hearing, the state also presented the testimony of Sergeant Virgil McKenzie of the Jefferson Parish Sheriffs Office, who was qualified as a fingerprint expert. He testified that he took defendant's fingerprints prior to the multiple offender hearing. McKenzie further testified that he matched the fingerprints he took from defendant with the fingerprints contained on the bill of information relating to case number 385-959. He also testified that he matched the fingerprints he took from defendant with the fingerprints contained on the arrest register relating to defendant's arrest in case number 336-938. McKenzie also testified that he matched the fingerprints he took from defendant with the fingerprints contained on the arrest register relating to defendant's arrest in case number 292-930.
Further, the certified copy of the screening action form in case number 336-938 contains both the arrest number, which appears on the arrest register, and the case number, which appears on the certified court documents. Thus, the screening action form serves to link the arrest register, which contains defendant's fingerprints, with the court documents.
Additionally, the arrest register in case number 292-930 contains fingerprints and information showing the date of arrest and the charge, which coincide with the information on the bill of information. Thus, the arrest register was linked with the certified court documents in case number 292-930.
Upon review, based on the evidence presented at the multiple offender hearing, and in accordance with the jurisprudence *1218 cited herein, we find that the state sufficiently proved that defendant was the same person convicted of the predicate offenses, and that the trial court therefore did not err in finding defendant to be a fourth felony offender.
In his fourth assignment of error in his pro se brief, defendant argues that his sentence of life imprisonment is constitutionally excessive.
La. R.S. 15:529.1 sets forth sentencing requirements for multiple offenders. For a fourth felony offender, La. R.S.15:529.1(A)(1)(c)(ii)) provides as follows:
If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In the instant case, defendant was convicted of a violation of La. R.S. 40:966(C), which is punishable by a term of imprisonment at hard labor for not less than four years, nor more than ten years. In addition, three predicate felonies were used to adjudicate defendant a multiple offender: 1) defendant was convicted twice of possession of cocaine, in violation of La. R.S. 40:967(C), which is punishable by a term of imprisonment at hard labor for not more than five years; and 2) defendant was convicted of being a convicted felon in possession of a firearm, in violation of La. R.S. 14:95.1, which is punishable by a term of imprisonment at hard labor for not less than ten nor more than fifteen years.
Based on the foregoing, the trial judge was required to sentence defendant to life imprisonment without benefit of parole, probation or suspension of sentence, because the fourth felony conviction, possession of heroin, is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years, and because defendant's conviction of being a convicted felon in possession of a firearm is punishable by imprisonment for more than 12 years.
This case is similar to State v. Bell, 97-1134 (La.App. 5 Cir.2/25/98), 709 So.2d 921, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. In Bell, the defendant was convicted of possession with intent to distribute cocaine, a violation of La. R.S. 40:967. Upon adjudicating the defendant to be a multiple offender, the trial court vacated the original 15-year sentence and sentenced the defendant to life imprisonment, without benefit of probation, or suspension of sentence. The defendant argued on appeal that his sentence of life imprisonment was unconstitutionally excessive. This court stated that La. R.S. 15:529.1 required the trial judge to sentence the defendant to life imprisonment, because one of his predicate offenses was a crime of violence. The defendant in Bell further argued that his sentence was unconstitutionally excessive based on State v. Dorthey, 623 So.2d 1276 (La.1993), one of the cases relied upon by defendant in the present case. The court in Bell, citing Dorthey, stated as follows:
If, [in sentencing the defendant] the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no `measurable contribution to acceptable goals of punishment' or that the sentence amounted to nothing more than `the purposeful imposition of pain and suffering' and is `grossly out of proportion to the severity of the crime,' he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
The court in Bell further stated:
At the sentencing hearing, defendant only requested a lesser sentence than the mandatory life sentence, and did not specify what he alleged were mitigating factors. On appeal, the defendant argues *1219 that the sentence was constitutionally excessive because of his youth and the fact that he was unarmed when committing the instant offense.
In State v. Young, 94-1636 (La.App. 4 Cir.10/26/95), 663 So.2d 525, our brethren observed that:
One of the basic principles universally applied by courts in testing constitutionality is the presumption of constitutionality. In the application of this principle a trial court considering whether the minimum sentence prescribed by the legislature for the particular crime committed by a defendant would be unconstitutional if applied to a particular defendant may do so only if there is substantial evidence to rebut the presumption of constitutionality. The trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant.
State v. Bell, 709 So.2d at 927.
In Bell, this court found that the defendant had not presented sufficient evidence to rebut the presumption of constitutionality of the sentence imposed and, therefore, the statutory minimum sentence of life imprisonment was mandated and proper.
In the instant case, defendant, prior to sentencing, asked the court to take into consideration the fact that he had never been convicted of a violent crime, and that he is a drug addict. On appeal, defendant only argues that his sentence is constitutionally excessive.
Upon review, we find that defendant has not presented sufficient evidence to rebut the presumption of constitutionality of the sentence imposed and, therefore, the statutory minimum sentence of life imprisonment is mandated and proper in this case.
Finally, the record was reviewed for errors patent, pursuant to La.C.Cr.P. art. 920, and one is noted. At the time of sentencing, the trial court informed defendant that he had two years "from today's date" to file post-conviction relief. However, La.C.Cr.P. art. 930.8 provides that the prescriptive period begins running from the day the judgment of conviction and sentence has become final. Therefore, we remand the matter with instructions to the trial court to advise defendant in writing of the time delays for seeking post-conviction relief within ten days of the rendering of this opinion and to file written proof in the record that defendant received said notice.
AFFIRMED; REMANDED.