839 So.2d 340 (2003)
STATE of Louisiana
v.
Daimeyahn C. STEVENSON.
No. 02-KA-769.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*341 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Gretna, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Daimeyahn Stevenson, appeals from his convictions of attempted armed robbery and armed robbery and respective sentences of imprisonment at hard labor for 47 years and, as a fourth *342 offender, to life imprisonment without benefit of parole, probation or suspension of sentence, to run concurrently. For the reasons which follow, we affirm the conviction and sentences and remand.
The Defendant was originally charged in a bill of information with one count of attempted armed robbery, La. R.S. 14:27:64, one count of armed robbery, La. R.S. 14:64, and one count of possession of a firearm by a convicted felon, La. R.S. 14:95.1. The Defendant proceeded to trial on counts one and two only.[1] His first trial ended in a mistrial. He was tried a second time.
At trial, the following evidence was adduced. At approximately 4:50 a.m. on August 23, 2001, Ashley Bulot (Bulot) and Donna Kay Billiot (Billiot) were working at Terrytown Café when the Defendant entered wearing a baseball cap. He pulled a gun, pointed the barrel of the gun at Bulot and demanded the "metal box." The metal box is a fire-safe box that is bolted under the counter and contains poker money and poker tickets. On the morning of the robbery, the box contained approximately $6,000 in cash and poker tickets. Bulot, in shock, turned and ran out the back door of the café.
The Defendant then came to Billiot's side of the counter and demanded the box. He tried to pick up the box but it was bolted to the counter. The Defendant demanded that Billiot open the box with her key. He took the money and tickets and stuffed them into his pockets. While the Defendant was crouched down behind the counter taking the contents of the box, Sergeant Brian Boudreaux on duty with the Jefferson Parish Sheriff's Office, entered the café. Billiot attempted to alert Sgt. Boudreaux to the situation but to no avail. The Defendant then stood up and pointed his gun at Sgt. Boudreaux, telling him not to move or he would kill him. Sgt. Boudreaux put his hands up and stepped away from the door to give the Defendant a clear path to leave. The Defendant jumped over the counter and ran out of the café. Sgt. Boudreaux ran after the Defendant with his weapon drawn.
Thereafter, Sgt. Boudreaux radioed headquarters. Approximately nine police units responded to the area and set up a perimeter around the block, sealing it off. A K-9 unit arrived at the scene and tracked the Defendant to a locked backyard shed. When the Defendant ignored several warnings to come out, the dog was sent in. The Defendant was apprehended and suffered several dog bites. Money and poker tickets were found on the floor of the shed.
The Defendant testified at trial. He admitted running from the police and hiding in a backyard shed. He claimed that he was walking along the road when the police pulled up beside him. The Defendant ran because of past bad experiences with the police. The Defendant denied robbing Terrytown Café and denied having been in the café that morning. Terrytown Café has several video surveillance cameras. The entire robbery was caught on tape and was played at trial. The jury found the Defendant guilty as charged on both counts.
The Defendant was sentenced to imprisonment at hard labor for 47 years on his attempted armed robbery conviction and 85 years on his armed robbery conviction. Both sentences were without benefit of parole, probation or suspension of sentence and to run concurrently.
The State filed a habitual offender bill of information alleging that the Defendant was a fourth felony offender based on his *343 present armed robbery conviction, a 1991 conviction for possession of cocaine with intent to distribute, a 1992 conviction for possession of cocaine, and a 1994 conviction for possession of cocaine. A habitual offender hearing was held and the trial court took the matter under advisement. Thereafter, the trial court found the Defendant to be a fourth felony offender. The Defendant's original sentence on the armed robbery conviction was vacated and he was resentenced to life imprisonment, under La. R.S. 15:529.1, without benefit of parole, probation or suspension of sentence, to run concurrently with the other sentence. The Defendant filed a motion to reconsider sentence which was denied. It is from these convictions and sentences that the Defendant appeals, assigning one error and requesting review for any errors patent.
ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error the Defendant claims that his enhanced sentence of life imprisonment is constitutionally excessive under State v. Dorthey, 623 So.2d 1276 (La.1993), which held that a punishment required by statute may nonetheless constitute excessive punishment if it is a purposeless imposition of pain and suffering and is grossly disproportionate to the severity of the crime. The Defendant argues that his non-violent history of drug offenses shows that he has a drug addiction and is not a hardened criminal who deserves a life sentence. He argues that a life sentence under the habitual offender law is not graduated and proportioned to his offense and is, therefore, excessive.
The Defendant, age 29, was sentenced to life imprisonment after being found a fourth felony offender following the armed robbery conviction. His predicate convictions are for possession of cocaine with intent to distribute and two convictions for possession of cocaine.
At the time the Defendant committed the instant offense, August 21, 2001, the provision applicable to his habitual offender sentence, La. R.S. 15:529.1(A)(1)(c) (i), provided that a fourth felony offender shall be sentenced "for a determinate term not less than the longest prescribed [sentence] for a first conviction but in no event less than twenty years and not more than his natural life."[2] Thus, in this case, because the maximum sentence for armed robbery is 99 years, the Defendant faced a sentencing range of 99 years to life without benefit of parole, probation or suspension of sentence. The trial judge imposed a life sentence.
Both the United States and the Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5th Cir.4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. If the trial judge finds that an enhanced punishment mandated by the Habitual Offender Law, La. R.S. 15:529.1, makes "no measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" *344 and is "grossly out of proportion to the severity of the crime," the court has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality. Id. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, 709 So.2d at 676, quoting State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
There must be substantial evidence to rebut the presumption of constitutionality. The "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." State v. Bell, 97-1134 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. Additionally, a defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. State v. Johnson, 709 So.2d at 676. The Louisiana Supreme Court explained:
[t]his is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.
State v. Lindsey, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, 343, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (4/30/01). Although Lindsey was decided under the old scheme of the Habitual Offender Law, its rationale is still viable. The 2001 amendments to La. R.S. 15:529.1 still maintain a gradation of punishment based on the non-violent and violent nature of the defendant's underlying and predicate offenses. The amended version of La. R.S. 15:529.1 is simply more lenient in that life sentences are mandated less often.
In the present case, the Defendant made no showing of exceptional circumstances to justify a downward departure from the mandatory 99 year to life sentence. No evidence was presented at the time of sentencing and no argument was made at sentencing regarding a downward departure from the required minimum sentence. Rather, the Defendant merely relies, on appeal, on the fact that his past three offenses were non-violent drug offenses. As stated above, the mere fact that a defendant's predicate convictions were non-violent does not warrant an automatic downward departure from a mandatory life sentence.
In Lindsey, supra, defendant was convicted of simple robbery which is classified as a crime of violence. However, his prior convictions consisted of non-violent crimes: attempted simple burglary, attempted burglary and simple burglary. The Supreme Court stated that the defendant was the *345 exact type of offender that the Habitual Offender Statute intends to punish so severely. The court stated:
[h]e is sentenced to life imprisonment because he continues to commit felony after felony. The fact his last felony was the only violent crime against a person is not an "unusual circumstance" that would support a downward departure. A person with three prior non-violent felony convictions who then proceeds to commit a felony involving violence against a person has shown that his criminal conduct is becoming worse. The goals of the Habitual Offender Statute, to deter and punish recidivism, are satisfied by imposing a life sentence against such a person.
State v. Lindsey, supra at 344.
Additionally, in State v. Baker, 00-1050 (La.App. 5th Cir.11/15/00), 776 So.2d 1212, 1218-1219, writ denied, 01-0044 (La.11/16/01), 802 So.2d 621, this Court determined that a record of non-violent offenses coupled with the fact that the defendant was an admitted drug addict was insufficient to rebut the presumption of the constitutionality of the defendant's enhanced life sentence under the multiple offender statute.[3]
In the present case, we find that the Defendant clearly failed to carry the burden of proof necessary for this Court to follow Dorthey and impose a sentence less than the minimum. This Court has upheld mandatory life sentences on the basis that the defendants have failed to offer evidence to rebut the presumption of constitutionality of their life sentences. See, State v. Armstrong, 99-925 (La.App. 5th Cir.2/16/00), 756 So.2d 533, 538, writ denied, 00-2419 (La.6/1/01), 793 So.2d 182, and State v. Bell, supra. This assignment of error lacks merit.
ERROR PATENT REVIEW
As requested by Defendant, the record was reviewed for errors patent, according to LA.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990). We note the following.
The habitual offender bill of information contains errors regarding the date of the original bill of information charging the Defendant with the offense sought to be enhanced and the date on which the Defendant was found guilty of that offense. Although the State amended the habitual offender bill of information twice, correcting various errors regarding the predicate offenses, it still contained several errors. The final amended habitual offender bill, filed May 20, 2002, alleged that the Defendant was charged in a bill of information with armed robbery on January 7, 2001, when the actual date of the original bill was September 7, 2001. Also, the habitual offender bill alleged that the Defendant was found guilty of the underlying armed robbery on December 7, 2001, when the actual date was November 15, 2001. The docket number and division for the offense that the State sought to enhance was correct on the amended habitual offender bill.
The purpose of a bill of information is to inform a defendant of the nature and cause of the accusation against him as required by the Louisiana Constitution, art. I, § 13. A clerical error in the bill does not require a dismissal of the bill or reversal of a conviction if the error or omission does not mislead the defendant to his prejudice. La.C.Cr.P. art. 464; State v. Varnado, 01-367 (La.App. 5th *346 Cir.9/13/01), 798 So.2d 191, 194; State v. Jason, 99-2551 (La.App. 4th Cir.12/16/00), 779 So.2d 865, 873, writ denied, 01-0037 (La.11/9/01), 801 So.2d 357.
We find that the errors in the amended habitual offender bill of information in the present case did not mislead or prejudice the Defendant. The habitual offender bill contained the correct case number, division, and statutory citation of the felony sought to be enhanced. A habitual offender hearing was held and there is no indication that the Defendant was confused, uninformed or prejudiced by the above errors.
We also found errors in the commitment. The commitment erroneously reflects the date on which the charges were resolved against the Defendant as being December 7, 2001, when the actual date was November 15, 2001. The commitment also erroneously indicates that the Defendant was found guilty by the judge, when he was actually found guilty by a jury. The commitment further fails to indicate that the Defendant was found to be a fourth felony offender. While these errors do not require that the habitual offender finding or enhanced sentence be set aside, they must be corrected. State v. Norman, 99-600 (La.App. 5th Cir.2/16/00), 756 So.2d 525, 532, writ denied, 00-0971 (La.3/23/01), 787 So.2d 1007.
Based on Norman, we will remand the case to the trial court with an order that the trial court amend the commitment to correct the inaccurate information regarding the date and the method by which the Defendant's charges were resolved. The trial court is also ordered to amend the commitment to provide the appropriate information regarding the multiple offender finding, namely that the Defendant was found to be a fourth felony offender as indicated by the transcript.[4]
Accordingly, we affirm the Defendant's convictions of attempted armed robbery and armed robbery and his sentences of imprisonment at hard labor, respectively, to 47 years and, as a fourth offender, to life imprisonment, without benefit of parole, probation or suspension of sentence, to run concurrently, and remand the case to the trial court and order that the commitment be corrected to accurately reflect the record events.
CONVICTIONS AND SENTENCES AFFIRMED;REMANDED.
NOTES
[1] The State nolle prosequied count three at the sentencing hearing on counts one and two.
[2] Defendant relied on the wrong habitual offender statute in his appellate brief. He erred in two respects. He relied on the version of the statute in effect prior to June 15, 2001 and he relied on the wrong section, La. R.S. 15:529.1(A)(1)(c) (ii) rather than the applicable section, La. R.S. 15:529.1(A)(1)(c)(i).
[3] In Baker, the defendant was convicted of possession of heroin and had two prior convictions for possession of cocaine and one prior conviction for felon in possession of a firearm.
[4] See, State v. Lynch, 441 So.2d 732 (La. 1983), which provides that the transcript prevails over the minute entry or commitment where there is a discrepancy.