STATE OF LOUISIANA

VERSUS

JOHN B. GUSTAVE, JR.

NO. 22-KA-139

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-6382, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 28, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED; REMANDED FOR RESENTENCING**
    **FHW**
    **JGG**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

_Alexis Barteet_
Alexis Barteet
Assistant Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Juliet L. Clark

COUNSEL FOR DEFENDANT/APPELLANT,
JOHN B. GUSTAVE, JR.
     Jane L. Beebe
     John B. Gustave

**WICKER, J.**

Defendant, John Gustave, Jr., seeks review of his conviction for domestic abuse battery by strangulation in violation of La. R.S. 14:35.3 and his subsequent adjudication and sentence as a second felony offender under La. R.S. 15:529.1. For the following reasons, we affirm defendant's conviction and multiple offender adjudication. However, we find an error patent on the face of the record reflects that defendant's enhanced sentence is illegally lenient; we thus remand this matter to the district court with instructions for resentencing.

**STATEMENT OF THE CASE**

On December 4, 2019, the Jefferson Parish District Attorney filed a bill of information charging defendant, John B. Gustave Jr., with domestic abuse battery by strangulation in violation of La. R.S. 14:35.3(L). Defendant was arraigned on December 10, 2019, and pled not guilty.

On February 6, 2020, the State filed a "Notice of Intent to Introduce Evidence of Other Acts." After a hearing, on June 16, 2021, the trial judge granted the State's Notice of Intent. On December 13, 2021, trial began before a twelve-person jury. On December 14, 2021, the jury unanimously found defendant guilty as charged. That same day, defendant orally motioned for a new trial, which the trial judge denied. After defendant waived sentencing delays, the trial judge sentenced defendant to three years imprisonment at the Department of Corrections.

On December 15, 2021, the State filed a multiple offender bill of information alleging defendant to be a second-felony offender. That same day, defendant executed a "Waiver of Constitutional Rights Plea of Guilty Multiple Offender" form and stipulated to being a second-felony offender. The trial judge vacated defendant's original sentence and resentenced him to four years imprisonment at hard labor. This timely appeal followed.

**FACTS**

Ms. Yearnater Scott testified at trial that she and defendant began dating in November of 2017. While they were dating, defendant moved into her house in early 2018, and they lived together for a few weeks. Ms. Scott testified that on April 12, 2018, she and defendant got into a verbal argument. During that argument, she asked defendant to leave her house. At that point, defendant became physically violent. Ms. Scott testified that defendant punched her in the face and, as he attempted to punch her in the face a second time, she dropped to the ground causing defendant to punch a hole in a closet door. At some point, Ms. Scott grabbed her cell phone, and defendant grabbed the phone from her and threw it onto the ground, damaging the phone as he ran out.

Ms. Scott acknowledged that, in the April 2018 incident between her and defendant, he did not choke or strangle her. She testified that she called 9-1-1 on that date and explained to a deputy what occurred. She testified that her relationship with defendant ended on that date, and that defendant did not immediately move back into her home thereafter.

Ms. Scott testified that she and defendant began speaking again in 2019 and that defendant asked if he could move into her home, as he had nowhere to live at that time. Ms. Scott stated that she lived in the home with her stepdaughter, Ms. Kayla White[1], who was approximately sixteen years old at the time of the July 24, 2019 incident at issue, and her godchild, who was approximately thirteen years old at the time of the incident at issue.

On July 24, 2019, defendant lived in the home with Ms. Scott but the two were not dating. Ms. Scott testified that, on that date, defendant called her while she was at work and asked her to give him a ride to his sister's home. During her

---

[1] Ms. Scott explained that Ms. White is in fact her ex-stepdaughter, but that Ms. White spent time with her in the summers and that she maintained a good relationship with her ex-stepdaughter.

lunch break, Ms. Scott went home to pick up defendant. She and defendant started talking, and it turned into an argument wherein defendant accused Ms. Scott of sleeping with her "ex", Ms. White's father, who had been to the house the night before.

Ms. Scott testified that the argument turned physical after defendant asked her to have sex with him and she repeatedly told him no. Ms. Scott testified that defendant began hitting her, punching her in the face three times, while accusing her again of sleeping with her "ex." She dropped to the ground and he continued to hit her while she was on the ground. She eventually begged defendant to let her clean her bloody face in the bathroom, and he allowed her to exit the bedroom into the bathroom to clean her face. As she was rinsing the blood from her face in the bathroom, defendant entered the bathroom, grabbed her by the neck, slammed her into the bathroom door, and stated that she had "that little b*** calling the police on him." As Ms. Scott struggled to fight him off, defendant began to strangle her with two hands and at some point, they fell into the bathtub, knocking down the shower curtain rod. Ms. Scott testified that she was barely breathing and could hear her heartbeat slowing down, and that she almost lost consciousness. Defendant then ran out of the house before police arrived.

Ms. Scott viewed photographs introduced into evidence demonstrating injuries to her face, including swollen lips and three scratches on her neck caused by defendant's fingernails to her neck.

Deputy Fidel Garcia with the Jefferson Parish Sheriff's Office testified that on July 24, 2019, he was working as a patrol deputy and responded to a 9-1-1 call at 3058 Aspen Drive in Marrero. When he arrived to the address, he first encountered "Ms. Scott's daughters" waiting outside the house. He noticed they were visibly upset, but informed him that they did not witness the battery. He proceeded into the house to speak to the victim, Ms. Scott. Deputy Garcia

indicated that he spoke to Ms. Scott and developed defendant as a suspect. As he spoke to Ms. Scott, he noticed swelling to her face, lacerations around her neck with red marks, and a cut underneath her right eye where blood was still present. Deputy Garcia reviewed and described several photographs of the scene and the victim and testified that the photographs corroborated Ms. Scott's account that she was battered and strangled.

Ms. White testified that she was eighteen years old at the time of trial and that Ms. Scott is her stepmother. Ms. White testified that on July 24, 2019, she was staying at "3085" Aspen Drive[2] with her stepmother and Ms. Scott's goddaughter. She indicated that she was sleeping when Ms. Scott's goddaughter woke her up and told her that "they" were fighting. She stated she "heard noise going against the wall" and heard Ms. Scott screaming "stop" repeatedly. Ms. White testified that she called for help.[3] Ms. White acknowledged that she did not witness the incident.[4] Ms. White stated that she saw Ms. Scott when the police arrived and that she noticed "a whole lot" of injuries to her body. She described that Ms. Scott "had black eyes, a cut underneath it, and scratches and stuff all over her face."

The State also presented the testimony of Deputy Zellie Rouse, a Jefferson Parish patrol deputy who responded to a 9-1-1 call arising out of the prior April 12, 2018 incident between defendant and Ms. Scott. Deputy Rouse testified that on April 12, 2018, she responded to a 9-1-1 call regarding a disturbance at 3061 Sienna Drive in Harvey. She testified that she spoke to a distraught woman, identified as Ms. Scott, who relayed that a domestic incident occurred. Deputy Rouse testified that the perpetrator struck the victim and broke her phone. Deputy

---

[2] Although Ms. White testified that the address in question is "3085 Aspen Drive," the record reflects that the correct address of the subject property is 3058 Aspen Drive.
[3] A 9-1-1 call placed on July 24, 2019, at 12:22 p.m. by Ms. White was played for the jury.
[4] She testified that Ms. Scott had security cameras in her house but not in the bedroom or bathroom where the incident occurred. Ms. Scott also testified that cameras are present in the house, but that none captured the incident at issue because they are not placed in the master bedroom or bathroom of the home.

Rouse testified that the investigation developed defendant as a suspect but that defendant was not at the scene when the deputy arrived.

**LAW AND ANALYSIS**

On appeal, defendant's counsel assigns as error the trial court's ruling granting the State's Notice of Intent to Introduce Other Crimes Evidence, complaining that the evidence of the prior 2018 incident between defendant and Ms. Scott should not have been presented to the jury. Defendant argues that the prejudicial effect of the prior crimes evidence outweighs any probative value under the facts of this case and pursuant to La. C.E. art. 404(B). Additionally, defendant has assigned two *pro se* assignments of error on appeal, challenging the validity of his multiple offender adjudication. We will address each assignment of error in turn.

In his first assignment of error, defendant contends that the trial judge erred in granting the State's Notice of Intent to Introduce Other Crimes Evidence and in allowing the State to present evidence of the prior April 12, 2018 incident between Ms. Scott and defendant. Specifically, counsel points to the fact that the 2018 incident between Ms. Scott and defendant did not involve any strangulation or choking, which defendant posits was the contested issue for the jury's consideration of the evidence presented at trial against him for the 2019 crime at issue. Defendant contends that the evidence was only presented to portray defendant as a person of bad character and that there is no evidence to prove that the crime at issue was in conformity with the alleged 2018 incident as required under La. C.E. art. 404.

The State responds that the evidence is admissible under both La. C.E. art. 404(B)(1) and La. C.E. art. 412.4 to show the volatile relationship between defendant and Ms. Scott. The State further points out that both incidents occurred in Ms. Scott's home, while the two resided together, and that during the course of

each physical attack, defendant damaged Ms. Scott's cell phone. The State argues that the evidence of the prior crime in this case was necessary to provide context of the defendant's relationship with Ms. Scott and that any prejudicial effect did not outweigh the probative value of the evidence in this case.

A district court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 347 So.3d 1046, 1055; *State v. Kiger*, 13-69 (La. App. 5 Cir. 10/30/13), 128 So.3d 552, 557. The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because the defendant has committed other such crimes in the past. *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28 So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860; *see also* La. C.E. art. 404(B)(1).

In 2016, the Louisiana legislature enacted La. C.E. art. 412.4 concerning other crimes evidence in domestic abuse and cruelty against juvenile cases, which provides in pertinent part:

> A. When an accused is charged with a crime involving abusive behavior against a family member, household member, or dating partner or with acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, household member, or dating partner or acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.

> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.

> C. This Article shall not be construed to limit the admissibility or consideration of evidence under any other rule.

> La. C.E. art. 412.4

This Court has found that La. C.E. art. 412.4 is intended to be an exception to Article 404(B)(1), which limits the use of other crimes evidence to non-propensity purposes and specifically prohibits evidence that tends to show the defendant's criminal propensity. *See State v. Simmons*, 21-0547 (La. App. 4 Cir. 11/24/21), 2021 WL 5577783, citing Louisiana Practice Evidence Art. 412.4, Evidence of Similar Crimes, Wrongs, or Acts in Domestic Abuse Cases and Cruelty Against Juveniles Cases (2021 ed.). Consequently, La. C.E. art. 412.4 allows the admission of other incidents of domestic abuse for any relevant purpose, including the defendant's character and his acts in conformity therewith, subject only to the balancing test established by La. C.E. art. 403. *State v. Gonzales*, 21-686 (La. App. 5 Cir. 1/24/22), 2021 WL 209619 (quotations omitted). The admissibility of evidence under this article is not limited to those actions that are identical or even similar in nature to the charged crime. *Id.*, citing *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 2021 WL 1660916.

Such evidence may be excluded if its probative value is substantially outweighed by "the dangers of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or waste of time." *See* La. C.E. art. 403. Any inculpatory evidence, however, is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1201, *writs denied*, 16-2189 (La. 9/15/17), 225 So.3d 479 and 16-2093 (La. 1/29/18), 235 So.3d 1104. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Ard*, 347 So.3d at 1057, citing *State v. Smith*, 19-607 (La. App. 5 Cir. 1/21/20), —— So.3d ——, 2020 WL 356010, *writ denied*, 20-328 (La. 5/1/20), 295 So.3d 945 (quotations omitted).

Upon review of the record, we find that the trial court did not abuse its discretion in granting the State's Notice of Intent as to the April 12, 2018 incident between defendant and Ms. Scott. We find such evidence to be designated as admissible under the exception set forth in La. C.E. art. 412.4. We further point out that Ms. Scott's testimony and the brief testimony by Deputy Rouse concerning the 2018 incident, in light of the evidence presented at trial, was not "cumulative, repetitive, or excessive" and did not overwhelm the evidence presented as to the single charged 2019 offense. *See State v. Hernandez*, 11-712 (La. App. 5 Cir. 4/10/12), 93 So.3d 615, 630, *writ denied sub nom. State ex rel. Hernandez v. State*, 12-1142 (La. 9/28/12), 98 So.3d 834. Moreover, the record reflects that the trial judge gave a limiting instruction to the jury prior to its deliberations regarding the evidence. Under these circumstances, we find that the probative value of the evidence outweighed the danger of unfair prejudice and that the district court did not abuse its discretion in allowing the State to present the evidence under La. C.E. art. 412.4. Accordingly, this assignment is without merit.

In his first *pro se* assignment of error, defendant contends that the trial judge committed reversible error when he failed to advise defendant verbally of his multiple offender rights pursuant to La. R.S. 15:529.1. Specifically, defendant asserts that the trial judge's failure to advise him of his right to remain silent and his right to trial on the multiple bill constitutes reversible error and asks this Court to vacate his conviction and sentence as a second-felony offender.

In order for a defendant to be adjudicated a multiple offender, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *See State v. Bannister*, 11-602 (La. App. 5 Cir. 2/14/12), 88 So.3d 628, 635, *writ denied*, 12-628 (La. 6/15/12), 90 So.3d 1060. La. R.S. 15:529.1(D)(1)(a) provides that the trial court shall inform a defendant of the allegations contained in the bill of information and

of his right to be tried as to the truth thereof and shall require the offender to say whether the allegations are true. *State v. Bruce*, 11-991 (La. App. 5 Cir. 10/30/12), 102 So.3d 1029, 1037, *writ denied*, 12-2568 (La. 4/26/13), 112 So.3d 839. La. R.S. 15:529.1 also implicitly requires that the trial court advise defendant of his right to remain silent. *State v. Holmes*, 12-351 (La. App. 5 Cir. 12/11/12), 106 So.3d 1076, 1082, *writ denied*, 13-86 (La. 6/14/13), 118 So.3d 1080.

The failure of the trial court to advise a defendant of his right to a trial and to remain silent is harmless error when the habitual offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant. *Id.* However, there is generally reversible error when the defendant stipulates to the habitual offender bill of information without having been informed of his right to a hearing or his right to remain silent. *State v. Jamison*, 17-49 (La. App. 5 Cir. 5/17/17), 222 So.3d 908, 914.

Louisiana jurisprudence instructs however that if the record reflects that the defendant was advised of his habitual offender rights by the trial judge and/or his attorney, then the defendant intelligently waived his rights. *State v. Jamison*, 17-49 (La. App. 5 Cir. 5/17/17), 222 So.3d 908, 914-15. In *Jamison*, *supra*, this Court was faced with a similar circumstance where the trial judge failed to verbally advise defendant at the multiple offender adjudication of his right to trial on the multiple bill or his right to remain silent. However, this Court considered that the Waiver of Rights Form for the multiple bill was referenced at the proceedings. This Court stated:

> [W]e find that although defendant was not completely advised of his habitual offender rights during the colloquy, the waiver of rights form, which was signed by defense counsel, the judge, and defendant, reflects that defendant was advised of his right to a hearing and to remain silent prior to his stipulation as a habitual offender. Further, defense counsel made a specific reference to the waiver of rights form prior to the judge's acceptance of defendant's stipulation to the habitual offender bill of information. As such, the record reflects that defendant was advised of his habitual offender rights and executed the waiver of

rights form prior to the colloquy and his stipulation to the habitual offender bill.

*State v. Jamison*, 222 So.3d at 915. Similarly, in this case, the trial judge confirmed that defense counsel reviewed the waiver of rights form with defendant prior to the proceeding. At the December 15, 2021 multiple offender adjudication, the trial judge told defendant that he had a multiple offender guilty plea form in front of him. The judge asked defendant if his lawyer explained the form to him, and defendant answered affirmatively.  The trial judge asked defendant if defendant had read the form and if his attorney had explained the form to him. Defendant answered affirmatively. The judge asked if defendant understood that he was a multiple offender and if he knew what that meant. Defendant replied affirmatively. The trial judge explained that a multiple offender adjudication meant that defendant's sentence could be enhanced because he has a prior felony conviction. He asked defendant if he understood, and defendant indicated he did. When asked if he signed his name on the document, defendant indicated that he did sign the form and that he did so freely and voluntarily. He stated he was not forced to sign his name. Thereafter, the trial judge accepted the stipulation and found defendant to be a second-felony offender.

The "Waiver of Constitutional Rights Plea of Guilty Multiple Offender" form was filed the same day of the proceeding and was executed and signed by defendant, his counsel, and the trial judge. By means of this form, defendant admitted to being a second-felony offender and indicated by his initials and by his signature that he understood that he was waiving certain rights, including his right to "plead not guilty to this charge" and his right to have a hearing and force the district attorney to prove certain things. The form also provided the following: "I understand that I have a right to remain silent throughout such a hearing and not have my silence held against me." By means of the form, defendant indicated that

he was satisfied with his attorney and the court in their efforts to explain his rights that were being waived. He also indicated that he had not been forced, coerced, or threatened to plead guilty and that he understood all the possible legal consequences of pleading guilty. He indicated that he wished to plead guilty, and the judge signed the form, accepting his plea as knowingly, intelligently, freely, and voluntarily made.

Upon review of the record, we find that although the trial judge failed to verbally advise defendant of his multiple offender rights, the waiver of rights form—which defendant indicated to the trial judge that his counsel had reviewed with him and that he understood at the proceeding—reflects that defendant was advised of his right to a hearing and his right to remain silent prior to his stipulation as a multiple offender. See *Jamison*, *supra*; see also *State v. Oliver*, 14-428 (La. App. 5 Cir. 11/25/14), 165 So.3d 970, 977, *writ denied*, 14-2693 (La. 10/8/15), 178 So.3d 1001.  This assignment is without merit.

In his second *pro se* assignment of error, defendant challenges the multiple offender bill contending that it contains fatal deficiencies.  Specifically, defendant points to the fact that the multiple offender bill lists his underlying crime as "purse snatching" rather than simple robbery and further in one instance lists a different individual, "Peter Barrosse," as the defendant for the predicate conviction.[5] Defendant contends this error is reversible and that his multiple offender adjudication should be set aside.

The purpose of a bill of information is to inform a defendant of the nature and cause of the accusation against him as required by the Louisiana Constitution, art. I, § 13. *State v. Stevenson*, 02-769 (La. App. 5 Cir. 1/28/03), 839 So.2d 340,

---

[5] The multiple offender bill indicates that the predicate offense was originally identified as purse snatching but that this was crossed through and simple robbery was handwritten above prior to the multiple offender adjudication.  That line also includes the signing of initials by an assistant district attorney and the date it was amended, December 15, 2021. Additionally, the multiple offender bill appears to have first reflected a sentencing date of July 20, 2021, but that this was crossed out to instead reflect the accurate date of December 14, 2021.

345, *writ denied*, 03-833 (La. 10/31/03), 857 So.2d 472. A clerical error in the bill does not require a dismissal of the bill or reversal of a conviction if the error or omission does not mislead the defendant to his prejudice. La. C.Cr. P. art. 464; *Holmes*, 106 So.3d at 1083.

In this case, defendant executed a "Waiver of Constitutional Rights Plea of Guilty Multiple Offender – LA.R.S. 15:529.1" form on the same date that the multiple offender bill was filed. The transcript reflects that the trial judge began asking defendant about the multiple offender bill, at which time the multiple offender bill was amended to reflect the correct predicate conviction of simple robbery, not purse snatching, and defendant stipulated to that predicate conviction. The transcript reflects that defendant was aware of the predicate conviction to which he was stipulating.

The record further reflects that defendant did not file a written response challenging the multiple offender bill, nor did he orally raise these issues at the habitual offender proceeding. A defendant who fails to object contemporaneously to an alleged defect in a multiple offender bill is precluded from raising that issue on appeal. *State v. Baptiste*, 16-316 (La. App. 5 Cir. 12/14/16), 209 So.3d 321, 328 (citing La. C.Cr.P. art. 841). By stipulating to the multiple offender bill, defendant waived his right to a hearing and any possible non-jurisdictional defects. *State v. Kent*, 15-323 (La. App. 5 Cir. 10/28/15), 178 So.3d 219, 234, *writ denied*, 15-2119 (La. 12/16/16), 211 So.3d 1165. Accordingly, we find defendant is precluded from raising these deficiencies as errors on appeal. *See also State v. Biglane*, 99-111 (La. App. 5 Cir. 5/19/99), 738 So.2d 630; *State v. Bernard*, 94-2052 (La. App. 4 Cir. 11/16/95), 665 So.2d 106, 108, *writ denied*, 95-2992 (La. 3/15/96), 669 So.2d 426. This assignment is without merit.

**ERRORS PATENT REVIEW**

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The record reflects the following errors patent requiring corrective action:

The trial judge imposed an enhanced sentence upon defendant that is illegally lenient.[6] La. R.S. 14:35.3(C) provides that at least forty-eight hours of the sentence imposed shall be served without the benefit of parole, probation, or suspension of sentence. Here, the trial judge imposed an enhanced sentence of four years imprisonment but did not restrict any benefits. While La. R.S. 15:529.1(G) requires all multiple offender sentences to be imposed without the benefit of probation or suspension of sentence, it does not impose a parole restriction. Rather, when a defendant is sentenced as a multiple offender, it is the penalty provision for the underlying offense, La. R.S. 14:35.3 in this case, that imposes a parole restriction. *State v. Bruins*, 407 So.2d 685, 687 (La. 1981); *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280.

Generally, when a district court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790, 801. Here, however, the district court's failure to impose the statutory restriction is not cured by La. R.S. 15:301.1 because the portion of the sentence to be served without the benefit of parole is left to the discretion of the district court under La. R.S. 14:35.3(C). Therefore, we remand this case for resentencing with instructions to

---

[6] The record also reflects that defendant's original sentence for his domestic abuse battery by strangulation conviction was illegally lenient because the trial judge failed to impose the mandatory fine under La. R.S. 14:35.3(L). However, because the trial court vacated defendant's original sentence prior to resentencing him as a second-felony offender, any issues pertaining to his original sentence are moot. *State v. Thomas*, 20-97 (La. App. 5 Cir. 11/4/20), 306 So.3d 568, 578; *State v. Martin*, 15-469 (La. App. 5 Cir. 12/23/15), 182 So.3d 1233, 1238.

the trial judge to impose defendant's enhanced sentence in accordance with the provisions of the underlying statute, La. R.S. 14:35.3(C), as it relates to the restriction of parole. *See State v. Ard*, 347 So.3d at 1060; *State v. Shelby*, 18-186 (La. App. 5 Cir. 12/27/18), 263 So.3d 1223, 1228-29; *State v. Napolean*, 11-530 (La. App. 5 Cir. 1/24/12), 87 So.3d 127; *State v. Tapps*, 02-547 (La. App. 5 Cir. 10/29/02), 832 So.2d 995, 1004, *writ denied*, 02-2921 (La. 4/21/03), 841 So.2d 789.

The record further reflects that the trial judge did not properly advise defendant of his post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Although the minute entry reflects that the trial judge properly advised defendant of the time period for seeking post-conviction relief pursuant to La. C.Cr.P. art. 930.8, our review of the transcript shows a proper advisal as to post-conviction relief was not provided. Where there is a discrepancy between the transcript and the minute entry, the transcript generally prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

It is well-settled that if a district court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. *State v. Becnel*, 18-549 (La. App. 5 Cir. 2/6/19), 265 So.3d 1017, 1022. In this case, because we are remanding this matter for resentencing, this error is moot. However, we point out this error to ensure that it may be corrected upon resentencing. See *State v. Hernandez*, 03-424 (La. App. 5 Cir. 10/15/03), 860 So.2d 94, 98.

**DECREE**

Accordingly, we affirm defendant's conviction for domestic abuse battery by strangulation under La. R.S. 14:35.3 and his adjudication as a second-felony offender under La. R.S. 15:529.1. We, however, find that an error patent on the

face of the record requires a remand to the trial court for resentencing with instructions to the trial judge to impose defendant's enhanced sentence in accordance with the provisions of the underlying statute, La. R.S. 14:35.3(C), as it relates to the restriction of parole.

**AFFIRMED; REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 28, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-139

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE L. BEEBE (APPELLANT)

### MAILED
JOHN B. GUSTAVE #66949 (APPELLANT)      HONORABLE PAUL D. CONNICK, JR.
PLAQUEMINE PARISH                       (APPELLEE)
DETENTION CENTER                        DISTRICT ATTORNEY
POST OFFICE BOX 67                      TWENTY-FOURTH JUDICIAL DISTRICT
POINTE À LA HACHE, LA 70082             200 DERBIGNY STREET
                                        GRETNA, LA 70053